HUNTINGTON NAT. BANK v. COMMISSIONER OF INTERNAL REVENUE.

No. 7238.

Circuit Court of Appeals, Sixth Circuit.

June 3, 1937.

James I. Boulger, of Columbus, Ohio, for petitioner.

J. P. Jackson, of Washington, D. C. (Sewall Key and John M. Hudson, both of Washington, D. C., on the brief), for respondent.

Before HICKS and SIMONS, Circuit Judges, and MARTIN, District Judge.

SIMONS, Circuit Judge.

Whether a trust instrument transferring stock to a trustee for the equal benefit of two beneficiaries created a single trust or two separate and distinct trusts, whether when the trustee sold stock through a broker at an advance over its cost to the settlor it realized a taxable gain thereon at the date of sale in one tax year or in a later year, when the broker's check for the proceeds was received, and whether the deficiency asserted against the trustee should be reduced by taxes paid by it on the assumption that it represented two distinct trusts when no claim for refund had been made and the period of limitation had expired, are the questions involved in this review. The Board of Tax Appeals found against the taxpayer, and it seeks reversal.

The petitioner is trustee under a declaration of trust made August 15, 1924, by Joseph H. Frantz, of Bexley, Ohio, whereby 2,000 shares of American Rolling Mill Company stock was transferred to it in trust, the principal represented by 1,000 shares to be for the sole use and benefit of one granddaughter of the trustor, and the principal of the other 1,000 shares to be for the sole use and benefit of his other granddaughter. All cash dividends or their equivalent (other than stock dividends) paid upon the total 2,000 shares were to be paid not to the granddaughters but to their mother (daughter of the trustor), who was to use or dispose of them in any manner that to her seemed best without duty to account to anyone. At her death such dividends were to be paid to her husband, to be used by him for the sole use, benefit, and support of the trustor's granddaughters, or of the survivor, or of the issue of

either. Stock dividends were to be divided equally and added to the principal of the trust, with provision for sale and reinvestment. If either of the trustor's grandchildren died before reaching 30 years of age without issue, the principal of the trust was to be retained for the benefit of the survivor or her issue. In case of marriage or death of either or both grandchildren before the age of 30 leaving issue, the trust fund was to be held by the trustee for the benefit of the issue of the deceased, share and share alike, in the interest of the mother of such issue. If both grandchildren were to die before reaching 30 years of age and without issue, the whole principal of the trust was to be paid to the trustor's daughter, and, should she also die without issue, to named donees. The trust is to continue until each grandchild reaches the age of 30, when the fund provided for each is to be paid over to her by the trustee.

■■ The deficiencies asserted by the Commissioner were for taxes upon the trust estate for 1927. Whether the trust instrument creates one trust, as contended by the respondent, or two, as urged by the taxpayer, is important, because, if the taxpayer is right on this and other issues involved, its taxes are less than the asserted deficiency. Whether the instrument created one or two trusts depends upon the intention of the donor as derived from the terms therein expressed. United States Trust Co. v. Commissioner, 296 U.S. 481, 56 S.Ct. 329, 80 L.Ed. 340; Fidelity & Columbia Trust Co. v. Lucas, 66 F.(2d) 116 (C.C.A.6); Lucas v. Fidelity & Columbia Trust Co., 89 F.(2d) 945, decided May 13, 1937. Throughout the present instrument all references to the trust are in the singular. This has been considered indicative of the trustor's intention to create but a single trust, even though there be more than one beneficiary. State Savings Loan & Trust Co. v. Commissioner, 63 F.(2d) 482 (C.C.A.7). While this terminology is not conclusive, yet, in the face of such designation frequently repeated, indication of a contrary intention should be clear. The taxpayer conceives such contrary evidence to reside in the reference by independent paragraphs to the thousand shares donated for the use and benefit of each granddaughter. There was otherwise no allocation of shares, and, while there may be more than one trust in a single res, Matter of Colegrove's Estate, 221 N.Y. 455, 459, 117

N.E. 813; Vanderpoel v. Loew, 112 N. Y. 167, 180, 19 N.E. 481; Rollestone v. National Bank of Commerce, 299 Mo. 57, 71, 252 S.W. 394, yet the language here used is indicative of little more than an intention to create a trust with two beneficiaries, each with equal share therein.

Consonant, however, with the singular terminology, is the provision for the disposition of the cash dividends arising out of the trust res. They are to go to the mother of the trustor's granddaughters, for her use and disposition without account to any one. It may be fair inference that the intent of this provision is that such dividends are to be used by her for the benefit of her children, but there is no obligation expressed in the trust instrument that they be so used. The mother is therefore likewise a beneficiary, and, while it may be granted that one may be a beneficiary of each of two distinct trusts, yet where there is disposition of income as an undivided fund, there is little room for inference in the face of repeated reference in the singular that such income is derived from separate trusts for each of her daughters rather than from one created for both. So too with the provision for disposition of income from cash dividends after the mother's death. They are to go to the father, who is under obligation to use the fund for the benefit and support of both his daughters, but without obligation for its equal allocation to the benefit and support of each. Thus again does the clearly indicated concept of singleness of produce deny the concept of its plural origin.

■■ It is, of course, true that the instrument provides for an equal division of stock dividends, and for their addition to the principal provided for each granddaughter. But, since there is to be no present distribution of principal, no division of the trust res until the termination of the trust or the happening of events specified in the instrument, this is no more than to say that when the trust terminates as to either or both granddaughters the principal, together with accretions thereto, is to be divided equally. It is not unimportant that until the present tax return was filed the trustee treated the trust res as the corpus of a single trust. This is, of course, not conclusive, but it is fair assumption in the usual case that the trustee has been consulted by the trustor in respect to acceptance of the trust and has some knowledge of his intention. In any event, the trustee's

construction has not been thought lacking in persuasiveness as to the purpose of the donor. United States Trust Co. v. Commissioner, supra; State Savings Loan & Trust Co. v. Commissioner, supra. Finally, it is to be noted that in the United States Trust Company Case, and in Commissioner of Internal Revenue v. McIlvaine et al., 78 F.(2d) 787, 102 A.L.R. 252 (C.C.A.7), where single trusts were held to have been effectively divided in pursuance of powers of amendment contained in the trust instruments, it was assumed, expressly in one case and impliedly in the other, that the original trusts, differing not materially from the one here considered, were single. The gains in controversy should have been returned as income of a single trust.

In 1927 the petitioner ordered Otis & Co., brokers, to sell 1,000 shares of American Rolling Mill stock belonging to the trust estate. On December 28th Otis executed the order, delivered its own or borrowed shares to the purchaser, and credited the petitioner's account with the proceeds of the sale. On December 29th the petitioner delivered certificates belonging to the trust to the office of the brokers in Columbus, Ohio. As they were registered in the name of a fiduciary, the Columbus office forwarded them to Cincinnati for transfer to Otis & Co., New York. The Cincinnati office presented the certificates at the transfer office of the American Rolling Mill Company, by which new certificates were issued and the Columbus office notified of the transfer by mail on December 30th. That day being Saturday and a half holiday, and two days of holiday following, the notice was not received by Otis until January 3, 1928, whereupon it delivered to the petitioner its check in payment of the stock. The petitioner reported the gain derived from the sale of the stock as income for 1928. The Commissioner assessed it as income for 1927, and it was so determined by the Board of Tax Appeals.

We agree that the sale was a completed transaction in December, 1927, and the gains taxable as income for that year. Nothing remained to be done by the seller of the stock in 1927 except to deliver the certificates, properly indorsed, to make the proceeds of the sale subject to its demand. Moreover, the general rule is that receipt by an agent is receipt by the principal. Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297. It is urged that a broker is not merely an agent, that, when he makes a sale of corporation shares and delivers his own or borrowed shares, the transaction constitutes a "short sale," and is not completed until the customer delivers to the broker a like number of shares. It is the general understanding, however, that a short sale is a contract for the sale of shares which the seller does not own, or which are not so within his control as to be available for delivery when under the rules of the stock exchange delivery must be made. Provost v. United States, 269 U.S. 443, 46 S.Ct. 152, 70 L.Ed. 352. The petitioner owned the certificates, was able to deliver them, and did in fact promptly deliver them to the broker. If the broker wished them transferred from a fiduciary, it was for reasons of his own, and, if he made a short sale, it was for his own account and not for the petitioner, who had authorized no short sale for its account. Ruml v. Commissioner of Internal Revenue, 83 F.(2d) 257, 258 (C.C.A.2); Hoffman v. Commissioner, 71 F.(2d) 929 (C.C.A.2); Commissioner of Internal Revenue v. Ferree, 84 F.(2d) 124 (C.C.A.3). As was said in the Ruml Case, "When the evidence of realization is a sale of personal property, it is not always necessary to deliver the property before there may be a deduction of a loss [or return of a gain]. It is enough that the obligation to deliver is so fixed that the loss is reasonably certain in fact and ascertainable in amount," citing Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

Lastly, the petitioner contends that it should have been given credit upon the deficiency for the amounts paid as taxes upon its separate returns for 1927 as trustee for each of two separate trusts. This contention was not presented to the Board except by petition to reopen on the merits, the granting of which, it has been repeatedly held, rests within the sound discretion of the Board. Bankers' Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; Weiller et al. v. Commissioner, 64 F.(2d) 480 (C.C.A.2); O'Rear v. Commissioner, 80 F.(2d) 473 (C.C.A.6). It is doubtful, therefore, that the question can be raised here. General Utilities Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 187, 80 L.Ed. 154; Helvering v. Salvage, 297 U.S. 106, 109, 56 S.Ct. 375, 376, 80 L.Ed. 511. In any event, while the Commissioner had declared overpayments in respect to such taxes and they were re-

fundable, no petitions for refund were ever filed, and, the period of limitation (section 284, Revenue Act of 1926, 44 Stat. 66) having run, the petitioner is too late. Dulin v. Commissioner, 70 F.(2d) 828, 830 (C.C. A.6). The contention that a taxpayer who has erroneously paid a tax may have it applied in reduction of other taxes due upon the same item of income, Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L. Ed. 1421; White v. Stone, 78 F.(2d) 136 (C.C.A.1), is inapplicable here. The rule as there developed applies to the relief of the identical taxpayer. Here the taxpayer is the trustee of one trust, the amounts sought to be credited were paid by the trustee as trustee of other and distinct trusts. Cf. United States v. Mroch, 88 F.(2d) 888 (C.C.A.6). Whether, if the point had been timely raised before the Board, the doctrine of Stone v. White, 57 S.Ct. 851, 81 L.Ed. ——, decided May 24, 1937, would apply, we have no need to decide.

The decision of the Board of Tax Appeals is affirmed.