**R. Guy BENNETT and R. Guy Bennett, Executor of the Estate of Mildred Bennett, Deceased, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 17189.

United States Court of Appeals Ninth Circuit.

Aug. 2, 1961.

**324**

Francis J. Butler, Spokane, Wash., and C. Orno Shoemaker, Clarkston, Wash., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, and Charles B. E. Freeman, Kenneth Levin, Attys., Dept. of Justice, Washington, D. C., and Dale M. Green, U. S. Atty., and Patrick H. Shelledy, Asst. U. S. Atty., Spokane, Wash., for appellee.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

This is an action to recover federal income taxes and interest allegedly overpaid by appellant for the taxable year ending December 31, 1955, recovery of which was denied by the district court.

The district court had jurisdiction under Title 28 U.S.C.A. § 1346(a) (1). This Court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294.

Appeal from the final judgment of the district court was taken by appellant R. Guy Bennett individually and as executor of the estate of his wife, Mildred Bennett, deceased. Bennett and his wife filed a joint federal income tax return for the taxable year 1955. Since the estate is a party only by reason of the joint return, we will hereafter for convenience refer only to Bennett as the taxpayer.

The taxpayer operated the Guy Bennett Lumber Company as a sole proprietorship which engaged in the sawmill and lumber business, the principal office of which was in Clarkston, Washington. A branch plant was maintained in Moscow, Idaho. The income from the business was reported by the taxpayer on an accrual basis.

During the calendar year 1955 and within two and one-half months thereafter, the taxpayer's two sons, Richard Guy Bennett and Frank Bennett, were employees of the business. The son Richard then was the general manager of the entire company. The son Frank was superintendent of the lumber mill at Clarkston.

For the taxable year 1955 the taxpayer and his two sons had an oral agreement that each of them would receive a salary and in addition 25 per cent of the net profits from the business. The bonus was difficult to compute at the end of the calendar year 1955 because a logger employed by taxpayer had stated in December of 1955 that the timber purchased by taxpayer in connection with the acquisition of the Moscow plant would run far short of scale. It was not possible to check the timber shortage until April 1956 because of the heavy snow in the area. Prior to the latter part of February 1954 the books of the company revealed no entry of any bonus or any bonus credited to the accounts of the taxpayer's sons. An entry in the work sheets of the company's accountant in the latter part of February 1956 only tentatively established the bonuses in question. The bonuses were not finally determined upon until their entry in the books of the company in April of that year, after the inventory of the timber had been ascertained and its valuation checked, which inventory revealed that there was no timber shortage, whereupon the bonuses were entered in the books of the company in the same amounts as the tentative figures entered by the accountant in 1956 on the work sheets of the company.

On his income tax return for 1955 the taxpayer deducted the bonuses in the total sum of $27,726.77 as a business expense. The two sons reported said last mentioned amount as income for the taxable year 1955 on their individual federal income tax returns.

The district director determined that the bonuses were an unallowable deduction as an expense under Section 267(a) (2) of the Internal Revenue Code of 1954 (Title 26 U.S.C.A. § 267) and thus increased the taxable income of taxpayer by the amount of $27,726.77, which resulted in a deficiency aggregating $15,572.78. The amount assessed was paid and the action for refund was filed.

The district court held that the deduction which was accrued but which remained unpaid was an expense barred by Section 267(a) (2) because the bonuses were not actually or constructively paid to the two sons in 1955 and two and a half months thereafter.

The Internal Revenue Code of 1954 authorizes the deduction from income of all ordinary necessary business expenses, including a reasonable allowance for salaries.[1] However, Section 267(a) (2) of the Internal Revenue Code of 1954 (Title 26 U.S.C.A. § 267(a) (2)) bars the deduction of expenses by an accrual basis taxpayer,[2] (1) if within the taxpayer's taxable year and two and one-half months thereafter (i) such expenses are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom payment is to be made; and (2) if, by reason of the method of accounting of the prospective payee, the amount of the expense is not, unless paid, includible in the gross income of the prospective payee for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) if, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the prospective payee are

1. Internal Revenue Code of 1954 (Title 26 U.S.C.A. § 162) in relevant parts provides:

"Trade or business expenses

"(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

"(2) * * *

"(3) * * *

"(b) * * *."

2. Internal Revenue Code of 1954:

"§ 267. Losses, Expenses, and Interest with Respect to Transactions Between Related Taxpayers.

"(a) **Deductions Disallowed.**—No deduction shall be allowed—

* * * * *

"(2) **Unpaid Expenses and Interest.**—In respect of expenses, otherwise deductible under section 162 or 212, or of interest otherwise deductible under section 163,—

"(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in

the gross income of the person to whom the payment is to be made; and

"(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

"(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

"(b) **Relationships.**—The persons referred to in subsection (a) are:

"(1) Members of a family, as defined in subsection (c) (4);

* * * * *

"(c) **Constructive Ownership of Stock.**—For purposes of determining, in applying subsection (b), the ownership of stock—

* * * * *

"(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and

* * * * *"

members of a family in a relationship specified in Section 267(c) (4).

■■ The narrow issue presented on this appeal is whether Section 267(a) (2) bars the taxpayer from deducting the amount of the bonuses because the same were not paid to or constructively received by his two sons during the period of the taxable year and two and one-half months thereafter. In this respect the district court found in its findings of fact that:

"Prior to the latter part of February, 1956, the books of the company revealed no entry of the bonus or any bonus credited to the boys' accounts. An entry on the work sheets of the company's accountant in the latter part of February, 1956, only tentatively established the bonus in question, and the said bonuses were not finally determined upon until their entry in the books of the company in April after the inventory of logs had been ascertained and the valuation checked, which was after the 2½ month period contemplated by Section 267 of the Internal Revenue Code of 1954. There is no other indication of payment, constructive or otherwise, within said period of time. The bonuses were not definitely ascertainable and were, in fact, uncertain."

Admittedly, no part of the bonus was paid to either son until after the first of April 1956. The taxpayer, however, argues that the bonuses were constructively received by the sons of the taxpayer before March 15, 1956, and that the finding of fact by the district court that there was no constructive receipt of said bonuses by said sons within the two and one-half month period following the end of the calendar year 1955 was erroneous. We have examined the record in this case and find sufficient evidence to support such finding. Income is constructively received only when it is subject to the unfettered command and control of the prospective recipient. Though not reduced to possession, it must be available to the taxpayer without restriction or limitation. Ross v. Commissioner of Internal Revenue, 1 Cir., 1948, 169 F.2d 483, 7 A.L.R.2d 719; United States v. Pfister, 8 Cir., 1953, 205 F.2d 538. If the taxpayer is free to enjoy the income, it is treated as received and is taxed to him whether he sees fit to enjoy it or not. Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. We are satisfied from an examination of all of the testimony before the district court that its finding of fact regarding the absence of constructive receipt is not clearly erroneous.

Taxpayer further contends that since he acted in good faith, and that the delay in ascertaining the amount of the bonus and in making appropriate entries on the books of taxpayer was the result of circumstances beyond his control other than any desire or intent to avoid taxes, Section 267(a) should not bar the allowance of the deduction. In answer to such contention, we adopt the views expressed in Radom & Neidorff, Inc. v. United States, Ct.Cl.1960, 281 F.2d 461, at page 464, in which the court passed upon a similar contention under the predecessor section of Section 267:

"There can be no doubt that the primary motivation of Congress in drafting section 24(c) was to prevent tax avoidance. However, the plain and unambiguous wording of the statute compels the view that as enacted, its scope is much broader. Nor does the legislative history bear out plaintiff's contention that the legislation was not meant to apply to a situation such as presented here. Had Congress intended section 24 (c) to apply solely in cases of attempted tax avoidance, which is not present here, either the wording of the statute or the legislative history would make such intention clear. Obviously the statute is not so worded and the legislative history does not conclusively show intent to include only situations involving tax avoidance. In other words, the amendment as written deals with the result of a failure to pay, and permits deduction if the salary was constructively received within the

period, even if not actually paid. Mertens Law of Federal Income Taxation, Vol. 4, § 25.11 (1954 Ed.)

"Obviously Congress could not and did not foresee the events which have taken place and which, by application of the statute, probably results in harsh treatment to the taxpayer. That certain inequities result from the tax laws is a natural consequence of an intricate tax system. However, as the Supreme Court held in United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 236, 75 S.Ct. 733, 736, 99 L.Ed. 1024, '* * * But as we have said before, "general equitable considerations" do not control the question of what deductions are permissible.' To grant plaintiff the relief prayed for would either be to invoke equity or to legislate, which in either instance, is not our province. Therefore, plaintiff's petition must be dismissed."

The judgment of the district court is affirmed.